IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KIMBERLY BLACK, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 14-0442-WS-N |
| | ) |
| GARY REYNOLDS, et al., | ) |
| | ) |
|     Defendants. | ) |

## ORDER

This matter is before the Court on the defendants' motion for summary judgment. (Doc. 69). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 70-71, 75, 77), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion is due to be granted in part and denied in part.

## BACKGROUND

According to the amended complaint, (Doc. 4), the plaintiff was employed by defendant Direct General Corporation ("Direct") as an insurance agent until being terminated in October 2013. Defendant Gary Reynolds was her manager. The amended complaint alleges that the defendants violated Title VII's prohibition on sex discrimination by: (1) promoting a male co-employee ("Ruffin") over her and/or placing him in charge of her schedule, *id*. at 2; (2) creating a sexually hostile work environment, *id*. at 3-4; and (3) terminating her employment.[1] The amended complaint further alleges that the defendants: (4) violated Title VII by

---

[1] The Court reads the amended complaint as challenging the plaintiff's termination only on the basis of retaliation, (Doc. 4 at 1-2), but the defendants discern an additional claim for termination on the basis of sex, so the Court will deem such a claim to be part of the lawsuit.

firing her in retaliation for complaining of harassment by Reynolds, (*id*. at 1-2); (5) violated the overtime provisions of the Fair Labor Standards Act ("FLSA") by requesting her to work off the clock and by altering her recorded time, (*id*. at 4); and (6) breached a contract prohibiting bullying and harassment. (*Id*. at 4).

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*,

477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[2] Accordingly, the Court limits its review to the exhibits, and to the specific portions of the exhibits, to which the parties have expressly cited. Likewise, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment," *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), and the Court accordingly limits its review to those arguments the parties have expressly advanced.

**I. Title VII.**

    **A. Employer.**

Title VII prohibits an "employer" from engaging in certain practices. 42 U.S.C. § 2000e-2(a). Direct says that it was not the plaintiff's employer and that Direct General Insurance Agency of Tennessee, Inc. ("Tennessee") was actually her employer. (Doc. 70 at 1 n.1). For this proposition, Direct cites only the

---

[2] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so."). "[A]ppellate judges are not like pigs, hunting for truffles buried in briefs," and "[l]ikewise, district court judges are not required to ferret out delectable facts buried in a massive record …." *Chavez v. Secretary, Florida Department of Corrections*, 647 F.3d 1057, 1061 (11th Cir. 2011) (internal quotes omitted).

defendants' answer to the amended complaint. (Doc. 13 at 1). But just as a plaintiff cannot avoid summary judgment merely by citing to her complaint,[3] a defendant cannot support summary judgment merely by citing to its answer.[4]

Direct acknowledges that a related entity may be deemed an employer under Title VII. *See generally Llampallas v. Mini-Circuits Lab, Inc.*, 163 F.3d 1236, 1244-45 (11th Cir. 1998) (discussing liability of related entities under "single employer" and "joint employer" theories). Direct describes itself as Tennessee's "parent corporation" and asserts – without citation to any part of the record – that "[n]o … evidence … exists in this case" that would support Direct's liability as a parent corporation. (Doc. 70 at 2 n. 1). As noted above, however, Direct cannot carry its threshold burden on motion for summary judgment simply by offering its ipse dixit that the plaintiff cannot prove an element of her case; instead, Direct must either "negate" that element with record evidence refuting it or "point" to materials in the record that demonstrate the plaintiff's inability to offer supporting evidence. Direct has done neither and has thus failed to carry its initial burden.

"[W]e now expressly hold that relief under Title VII is available against only the employer and not against individual employees whose actions would constitute a violation of the Act, regardless of whether the employer is a public company or a private company." *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006) (emphasis omitted). This is true even when the individual is the president and sole shareholder of the corporate employer. *Id*. at 932, 934. The amended complaint establishes that Reynolds was merely the plaintiff's "manager" and thus

---

[3] *E.g., L.S.T., Inc. v. Crow*, 49 F.3d 679, 684 (11th Cir. 1995).

[4] At any rate, the answer does not assert that Tennessee was at all relevant times the plaintiff's employer; it simply states that Tennessee "terminated Plaintiff's employment on October 24, 2013." (Doc. 13 at 1).

not her employer.  (Doc. 4 at 1-2).[5]  The plaintiff's Title VII claims against Reynolds thus fail as a matter of law.

### B. Promotion.

"A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ...."  42 U.S.C. § 2000e-5(e)(1).  This means that "a charge must be filed with the EEOC within 180 days of the date of the act giving rise to the charge."  *Calloway v. Partners National Health Plans*, 986 F.2d 446, 448 (11th Cir. 1993).  "A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed.  ...  [I]t is merely an unfortunate event in history which has no present legal consequences."  *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977).  "Failure to file a timely complaint with the EEOC mandates the dismissal of the Title VII suit."  *Wilson v. Bailey*, 934 F.2d 301, 304 n.1 (11th Cir. 1991).

The plaintiff knew in January 2013 that Ruffin had been promoted/placed in charge of her schedule.  (Doc. 70 at 50, 77).  The defendants argue that the plaintiff was required to file an EEOC charge challenging this conduct no later than July 2013; since her charge was not filed until March 2014, they conclude that the promotion claim is time-barred.  (Doc. 70 at 8-9).  The plaintiff offers no response, and the Court agrees with the defendants.  Any Title VII claim regarding promotion is barred by the statute of limitations.

### C.  Hostile Work Environment.

"[A] plaintiff wishing to establish a hostile work environment claim [must] show:  (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a

---

[5] Reynolds' uncontroverted declaration echoes that he is only an area sales manager.  (Doc. 70 at 31).

protected characteristic of the employee …; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment .…" *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). The defendants focus on the fourth element. (Doc. 70 at 10-12).

"Determining whether the harassment was sufficiently severe or pervasive involves both an objective and a subjective component. [citation omitted] In determining the objective element, a court looks to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008) (internal quotes omitted). "Any relevant factor must be taken into account, but no single factor is dispositive." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1299 (11th Cir. 2012).

The plaintiff testified to the following words and conduct that contributed to a hostile work environment: (1) on two occasions, Reynolds "ask[ed] whether [sic] he could get alcohol and go to strip clubs"; and (2) on one occasion, Reynolds urinated on the toilet seat and floor in the men's bathroom.[6] The plaintiff can recall nothing else that she felt was inappropriate. (Doc. 70 at 35-36).[7]

---

[6] The defendants question whether the urination incident was based on the plaintiff's sex. (Doc. 70 at 12). Because the plaintiff testified that the incident occurred in an all-female office and was not repeated in any office housing male employees, (Doc. 70 at 35), the Court assumes for present purposes that the conduct could have been motivated by the plaintiff's sex.

[7] The plaintiff vaguely mentioned several other comments in her amended complaint, (Doc. 4 at 3-4), but by her deposition testimony she limited her claim to those listed in text.

As to frequency, the plaintiff identifies three incidents during her ten-month employment.[8] The Eleventh Circuit considers an incident every two months, or even every month, to be too infrequent to weigh in favor of a harassment claim. *Mendoza v. Borden*, 195 F.3d 1238, 1249 (11th Cir. 1999) (five inappropriate instances in eleven months were "far too infrequent" to support a sexual harassment claim); *Gupta v. Florida Board of Regents*, 212 F.3d 571, 579, 584-85 (11th Cir. 2000) (eight episodes of touching, partial exposure, staring and complimenting in six or seven months, plus repeated invitations to lunch during the same period, was not frequent). Because the frequency alleged here is less than one incident every three months, this factor weighs against the plaintiff.

As to severity, "[a] recurring point in these [Supreme Court] opinions is that … offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (internal quotes omitted). Reynolds never touched the plaintiff, never invaded her personal space, never asked probing personal questions, never sought a date, never made the slightest advance of any kind. Nor did he use vulgar language regarding the plaintiff or women in general. His only words were two vague comments about wanting to drink and visit a strip club, and his only conduct was urinating outside the toilet in the men's (not the women's) bathroom. (Doc. 70 at 35). Talk of frequenting strip clubs may be "crass," *Bussell v. Motorola, Inc.*, 141 Fed. Appx. 819, 823 (11th Cir. 2005), *vacated on other grounds*, 549 U.S. 801 (2006), *opinion reinstated*, 228 Fed. Appx. 832 (11th Cir. 2006), and urinating on a bathroom floor is certainly boorish, but "being subjected to crude, boorish behavior does not necessarily provide a disgruntled employee with a legal cause of action." *Fortson v. Carlson*, 618 Fed. Appx. 601, 608 (11th Cir. 2015) (internal quotes omitted). "It is not enough that a supervisor or coworker fails to treat a female employee with

---

[8] The plaintiff began her employment in December 2012. (Doc. 70 at 38).

sensitivity, tact, and delicacy, uses coarse language or is a boor. Such failures are too commonplace in today's America, regardless of the sex of the employee, to be classified as discriminatory." *Gupta*, 212 F.3d at 585. The comments and conduct in this case are far more tepid than those in *Mendoza*, *Gupta* and other Eleventh Circuit cases holding that the plaintiff was not exposed to severe comments or conduct. Accordingly, this factor also weighs against the plaintiff.

Staring at a subordinate and repeatedly asking her to lunch is not threatening or humiliating. *Gupta*, 212 F.3d at 585. Rubbing against a plaintiff's hip while touching her shoulder, making sniffing sounds, and saying, "I'm getting fired up," is not threatening or humiliating. *Mendoza*, 195 F.3d at 1248-49. Given those parameters, Reynolds' vague expression of a desire to visit a strip club cannot be considered threatening or humiliating. And while urinating on the floor might be humiliating if done in the plaintiff's presence or on her belongings, or if she was required to clean up the mess, none of those circumstances are present here. This factor as well weighs against the plaintiff.

Finally, because the plaintiff admits that Reynolds' comments did not interfere with her work performance, (Doc. 70 at 36-37), this factor also weighs against the plaintiff.

The plaintiff (who ignores this claim in her response) has identified no additional factors the Court should consider. Because all four of the factors generally employed in evaluating the fourth element weigh against the plaintiff, it is clear that she cannot establish that element, and her claim therefore cannot stand.

### D. Termination Based on Sex.

"To prevail on a claim for discrimination [in termination] under Title VII based on circumstantial evidence, [a plaintiff] must show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his

8

protected class or was treated less favorably than a similarly-situated individual outside his protected class." *Maynard v. Board of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003); *accord Flowers v. Troup County*, 803 F.3d 1327, 1336 (11th Cir. 2015). The defendant argues the plaintiff cannot establish the fourth element of her prima facie case. (Doc. 70 at 14-15).[9]

It is uncontroverted that the plaintiff was replaced by another female. (Doc. 70 at 32). She thus cannot establish the fourth element of her prima facie case under the first alternative. The question becomes whether the plaintiff was treated less favorably than a similarly situated male.

The plaintiff was terminated for falsifying her time records. (Doc. 70 at 32, 74-75). "When a plaintiff alleges discriminatory discipline [including termination], to determine whether employees are similarly situated, ... we require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Burke-Fowler v. Orange County*, 447 F.3d 1319, 1323 (11th Cir. 2006) (internal quotes omitted); *accord McCann*, 526 F.3d at 1373-74.[10] It is uncontroverted that no male insurance agent under Reynolds' supervision has ever falsified time records but not been terminated. (Doc. 70 at 32). Accordingly, the plaintiff cannot establish the fourth element of her prima facie case under the second alternative, either.[11]

---

[9] Although a prima facie case may be established with direct evidence or, on occasion, with a different formulation of the fourth element, the plaintiff identifies no direct evidence and proposes no alternate version of the prima facie case. Accordingly, the Court utilizes the version urged by the defendants.

[10] *Burke-Fowler* invoked the "prior panel precedent" rule to select the "nearly identical" standard rather than the seemingly lower standard of "similar[ity]" articulated in some Eleventh Circuit opinions. 447 F.3d at 1323 n.2.

[11] The defendants had video evidence that the plaintiff left the office on five days in the same pay period for a total of almost six hours, and they had time record evidence that she had not clocked out upon leaving or in upon returning. The defendants also had been told by the plaintiff that she was too busy to take a lunch break those days but that

### E. Termination Based on Retaliation.

"It shall be an unlawful employment practice for an employer to discriminate against any of [its] employees ... because he has opposed any practice made an unlawful employment practice by this subchapter …." 42 U.S.C. § 2000e-3(a). "A prima facie case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). The plaintiff believes she engaged in protected oppositional activity by sending to several corporate representatives a particular e-mail. (Doc. 70 at 71-72). The defendants argue the e–mail was not protected activity because it did not indicate the plaintiff was complaining of any practice made unlawful by Title VII. (*Id*. at 15-17).

The plaintiff's e-mail complains of "bullying and harassment" by Reynolds, but nowhere does it indicate that his conduct was based on her sex as opposed to, say, a personal dislike. On the contrary, the plaintiff complained that Reynolds "has it out for me or that he doesn't like me," which plainly reflects a personal

---

she might have been on personal business (classes, picking up children) during the times in question. The plaintiff now says it is "possible" she was engaged in marketing work when she left the office and that, even if she was on personal business, she might not have clocked out because the clock was malfunctioning, and she might have told Reynolds this at the time. But the plaintiff presents no evidence that she made such statements when offered the opportunity to defend her actions before she was terminated. Even had she done so, the defendants had ample grounds to believe that the plaintiff had falsified time records, a terminable offense; and even if the defendants were wrong, "[a]n employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct." *Damon v. Fleming Supermarkets, Inc*., 196 F.3d 1354, 1363 n.3 (11th Cir. 1999). The plaintiff does not suggest that the defendants could not reasonably have believed that she had falsified her time records. And even if she could show that she did not actually violate the work rule, that would not excuse her from having to identify a comparator that was accused of violating the rule but was not terminated. *Jones v. Bessemer Carraway Medical Center*, 137 F.3d 1306, 1311 n.6 (11th Cir.), *superseded in unrelated part*, 151 F.3d 1321 (11th Cir. 1988).

10

rather than gender-based bias.  Moreover, the e-mail identified the source of Reynolds' animus as that the plaintiff had gone over his head to object to his directive that the office remain open until 7:00, prompting him to announce to the plaintiff that he "did not appreciate being back doored."  Finally, all incidents of "bullying and harassment" described in the e-mail (poor evaluation, written warning, false reports, denials of paid time off, refusal of lunch breaks and exclusion from an office contest) are described in gender-neutral terms.  (Doc. 70 at 70-71).

"[T]o be classified as a statutorily protected activity the complaint needs to at least say something to indicate discrimination is at issue."  *Abuelyaman v. Illinois State University*, 667 F.3d 800, 814 (7th Cir. 2011) (internal quotes omitted).  "Although an employee need not use the magic words 'sex' or 'gender discrimination' to bring her speech within Title VII's retaliation protections, she has to at least say something to indicate her gender is an issue."  *Sitar v. Indiana Department of Transportation*, 344 F.3d 720, 727 (7th Cir. 2003).  Simply complaining that one feels "picked on" will not suffice.  *Id*.

The Eleventh Circuit apparently has not so held in a published case, but it has come to the same conclusion in unpublished opinions.  *See Demers v. Adams Homes, Inc.*, 321 Fed. Appx. 847, 852 (11th Cir. 2009) ("[T]o engage in protected activity, the employee must still, at the very least, communicate her belief that discrimination is occurring to the employer, and cannot rely on the employer to infer that discrimination has occurred.") (internal quotes omitted); *Jeronimus v. Polk County Opportunity Council, Inc.*, 145 Fed. Appx. 319, 326 (11th Cir. 2005) (a complaint "of being 'singled out,' being subjected to 'a campaign of harassment,' and working in a 'hostile environment' … did not amount to protected conduct" where it "never suggested that this treatment was in any way related to [the plaintiff's] race or sex").  Most plainly, "[a] complaint about an employment practice constitutes protected opposition only if the individual explicitly or implicitly communicates a belief that the practice constitutes unlawful

employment discrimination." *Murphy v. City of Aventura*, 383 Fed. Appx. 915, 918 (11th Cir. 2010) (internal quotes omitted). This Court has recognized that, in light of *Murphy*, "[t]he law is clear." *Roberson v. BancorpSouth Bank, Inc.*, 2013 WL 6254108 at *10 (S.D. Ala. 2013).

As discussed above, the plaintiff's e-mail does not explicitly or implicitly communicate a belief that Reynolds was engaged in discrimination or harassment based on the plaintiff's sex. Therefore, her e-mail does not constitute protected activity and, without such activity, her retaliation claim necessarily fails.

## II. FLSA.

The amended complaint alleges that the defendants constantly violated the FLSA's overtime provisions by requesting her to work off the clock and that Reynolds was able to alter her time cards so that they did not account for all her overtime hours (which hours would reflect badly on him with management). (Doc. 4 at 4). The defendants argue the plaintiff cannot prove she worked overtime hours and cannot prove they knew or had reason to believe she had done so. (Doc. 70 at 21-24).[12]

### A. Performance of Uncompensated Work.

"Although a FLSA plaintiff bears the burden of proving that he or she worked overtime without compensation, the remedial nature of this statute and the great public policy which it embodies … militate against making that burden an impossible hurdle for the employee." *Allen v. Board of Public Education*, 495 F.3d 1306, 1315 (11th Cir. 2007) (internal quotes omitted).

The defendants first argue that the plaintiff has no evidence that her time records were altered by anyone associated with them. (Doc. 70 at 21-22). The

---

[12] The defendants note generally that liability under the FLSA is limited to "employers," (Doc. 70 at 1 n.1), but without attempting to establish that they cannot fall within that classification for purposes of the Act. The Court will not construct or support such an argument on their behalf.

plaintiff's burden, however, is not to prove who is responsible for the underpayment but only that the underpayment occurred. And the very deposition testimony on which the defendants rely provides evidence that on several occasions the plaintiff was paid for fewer hours than her recorded time reflected. (*Id*. at 43).

The defendants next argue that the plaintiff has no evidence of "any dates or weeks in which" she was not fully compensated. (Doc. 70 at 21). However, they cite to no part of the record – such as, for example, an admission by the plaintiff – supporting such a proposition. Nor have they attempted to show that, despite the remedial nature of the FLSA, a plaintiff cannot recover except as to precise days she can identify as to which she was not fully compensated.[13]

Finally, the defendants assert that the plaintiff cannot offer evidence of the number of uncompensated hours or (which is apparently only a mathematical calculation) the amount of overtime compensation due. (Doc. 70 at 21). The only deposition testimony to which they cite addresses only the plaintiff's claim that her time records were sometimes altered to remove recorded hours; it does not address in any fashion the time the plaintiff worked off the clock. (*Id*. at 43). Even as to the former, the cited testimony does not reflect the plaintiff's inability to testify as to the amount of uncompensated time.[14] Nor have the defendants attempted to show that, under the FLSA's remedial scheme, such uncertainty is fatal to a plaintiff's claim.

---

[13] *See generally Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680 (1946) (discussing ways in which an employee may meet her burden).

[14] The plaintiff testified only that she was "not sure" about the number of hours she worked for which she was not paid due to alterations of her time records. The defendants have not attempted to support the dubious proposition that a witness cannot testify to a fact unless she is "sure" the fact is correct and precise.

### B. Awareness of Uncompensated Work.

An employer must pay its employee for hours employed, and "[a] person is employed if he or she is suffered or permitted to work." *Allen*, 495 F.3d at 1314. "It is not relevant that the employer did not ask the employee to do the work. The reason that the employee performed the work is also not relevant. If the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted." *Id*. (internal quotes omitted). As the defendants note, (Doc. 70 at 22), "a court need only inquire whether the *circumstances* … were such that the employer either had knowledge [of overtime hours being worked] or else had the opportunity through reasonable diligence to acquire knowledge." *Reich v. Department of Conservation and Natural Resources*, 28 F.3d 1076, 1082 (11th Cir. 1994) (emphasis in original, internal quotes omitted).

As noted, one prong of the plaintiff's claim is that time she recorded was altered and her pay cut accordingly. As to this allegation, the defendants make no argument that they lacked actual or constructive knowledge.

The plaintiff claims that she performed work off the clock by engaging in marketing activities, and making bank runs, during her off-the-clock lunch break. (Doc. 70 at 44). The defendants deny they knew, or had reason to know, that she was doing so, because the plaintiff did not report this time on her time records. (Doc. 70 at 22-23). None of the cases cited by the defendants, however, support the proposition that an employer possessing reason to know an employee is working without compensation can escape liability simply because the employee did not report the hours on her time records, and each in fact acknowledges precisely the opposite.

The plaintiff's evidence – as cited by the defendants themselves – is that she worked alone in her office; that she was required to engage in marketing activities that could only be performed outside the office; that she could not perform these activities during the work day because she could not close the office

in order to do so; and that, under these circumstances, Reynolds told her she could market on her lunch break. (Doc. 70 at 44-45). The defendants suggest vaguely that they could not have known the plaintiff performed these marketing duties off the clock, but that is difficult to imagine, especially since Reynolds admits he regularly reviewed his agents' time records, (*id*. at 31), meaning he would know the plaintiff was taking her lunch breaks – the period during which he had told her to conduct her marketing – off the clock.

The defendants note that the plaintiff was paid for overtime hours in every full month she worked, from which they conclude that she knew perfectly well how to report overtime and so cannot be believed when she says she worked unreported hours. (Doc. 70 at 24). This may or may not be a promising jury argument, but it has no force on motion for summary judgment.

### III. Breach of Contract.

The amended complaint alleges that Reynolds' bullying and harassment of the plaintiff breached a contract that forbids such conduct. (Doc. 4 at 4). The plaintiff in deposition confirmed that her contract claim is that Reynolds intimidated her but was not terminated for such conduct after she complained. (Doc. 70 at 51).

The defendants' argument, unfortunately, does not address this claim. Instead, the defendants misinterpret the plaintiffs' claim as one that her termination (not Reynolds' conduct) breached a contract. This error leads them to argue that the plaintiff was an at-will employee who could, under Alabama law, be fired for any reason or no reason at all. (Doc. 70 at 24-26). This may well be true, but it is non-responsive to the plaintiff's actual claim. While it seems doubtful the plaintiff can prove the existence of a contractual right not to be bullied or harassed, the defendants have failed to demonstrate that she cannot do so.

## CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment is **granted** with respect to all of the plaintiffs' Title VII claims and **denied** as to her claims under the FLSA and for breach of contract.

DONE and ORDERED this 15th day of December, 2015.

s/ WILLIAM H. STEELE<br>
CHIEF UNITED STATES DISTRICT JUDGE